**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA, )
)
       Plaintiff, )
) Case No: 19-714(PAD)
  v. )
(2) FREDDY JOSE MARVAL-RIVERO )
       Defendant, )
)
_____ )

MOTION TO DISMISS INDICTMENT

TO THE HON. PEDRO A DELGADO HERNANDEZ
US DISTRICT COURT JUDGE

    COMES NOW Mr. Freddy Jose Marval-Rivero by his attorney, and very respectfully States and Prays:

    On September 21, 2020, the Government filed a Motion Requesting the Court to make a pre-trial jurisdictional determination.(ECF#29) The United States requests a determination that the defendant's vessel is "subject to the jurisdiction of the United States" within the meaning of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. §§ 70501 et seq. (ECF#29)

    The Government states that the exercise of jurisdiction over a foreign-flagged vessel, when the flag nation has consented or waived objection to the enforcement of United States is **proven** in trial conclusively by certification of the

Secretary of State or the Secretary's designee, as per 46 U.S.C. § 70502(c)(2). (ECF# 29, p. 5)

Mr. Marval respectfully alleges that the Maritime Drug Law Enforcement Act, 46 U.S.C. §70502(c)(2)[1], violates Article III of the US Constitution and Marval's Sixth Amendment Right to a jury trial by giving dispositive weight to the executive branch's assertion that jurisdiction exists.

## RELEVANT FACTS

On October 19, 2019, while on routine patrol, a Marine Patrol Aircraft (MPA) located a Go-Fast Vessel (GFV) heading north at 20kts 60NM North of La Guajira, Colombia. Upon detection by the MPA, the GFV altered course south and began to jettison packages. The MPA reported this information to the **Dutch Navy Vessel** HNLMS GRONINGEN with a United States Coast Guard Law Enforcement Detachment (LEDET). The **Dutch Navy Vessel** HNLMS GRONINGEN deployed their small boat, with US LEDET members onboard. Once within visual distance from the GFV, the **Dutch Navy Vessel** small boat engaged the blue light announcing law enforcement presence. The GFV was underway and the **Dutch Navy Vessel** small boat had to give pursuit of the GFV, reaching speeds of 20+ knots. While giving chase, law enforcement

---

[1] "Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States . . . (A) may be obtained by radio, telephone, or similar oral or electronic means; and (B*) is proved conclusively by certification of the Secretary of State or the Secretary's designee.* (emphasis added).

observed packages being jettisoned from the GFV. Throughout the pursuit, LEDET members were giving verbal commands for the GFV to halt. Ultimately, the GFV came to a stop.

The Dutch Navy Vessel **(This important fact totally omitted by the Dept. of State Certifying Officer)** deployed a small Dutch Navy boat with US Coastguard personal and they proceeded to board the defendant's vessel. The master of the GFV made a verbal claim of Venezuelan nationality for the vessel and its crew. This apparently to the US Coastguard teams that are on a foreign nation vessel, operating with them presumably in a technical assistance capacity.

We do not know if it is the U.S.A. or the **Dutch Navy** contacted Venezuela. On October 19, 2019, the recognized government of Venezuela waived its primary right to exercise jurisdiction over the GFV and its crew and consented to the enforcement of United States law.

A second **Dutch Navy small boat** with presumably **Dutch Navy Personnel** was deployed to recover the jettisoned packages. **The Dutch Navy recovered** a total of eleven (11) bales of contraband were recovered. **The Dutch Navy Law enforcement** seized approximately 330 kilograms of cocaine. A field test of a sample resulted positive to cocaine. The second small **Dutch Navy** boat also recovered satellite phones, cellular phones, documents, and

wallets. Ion scan swipes on the vessel yielded positive to cocaine. All defendants were arrested in international waters.

On November 6, 2019, a federal grand jury returned an indictment against all three defendants charging them with Aiding and Abetting in the Possession with Intent to Distribute a Controlled Substance on Board a Vessel Subject to the Jurisdiction of the United States. ECF No. 19.

On **March 5, 2020,** Coast Guard Commander David Bartram, the U.S. Secretary of State's authorized designee under the MDLEA, certified under penalty of perjury that the Government of Venezuela authorized the United States to exercise jurisdiction over the Go-Fast Vessel, its cargo, and its crew.

### ARGUMENT

Mr. Marval challenges the district court's subject-matter jurisdiction, arguing that the Maritime Drug Law Enforcement Act delegates to the Executive Branch, in violation of the constitutional separation of powers (Article III), the power to manufacture federal jurisdiction over vessels in international waters, *regardless of whether they are in fact stateless, or even as in the present case, in which the record belies that determination.*

The MDLEA, disables the adversary system by requiring courts to accept the Executive Branch's assertion that subject-

matter jurisdiction exists. It thus requires this Court to accept unquestioningly facts whose veracity is essential to the existence of an Article III case or controversy. See United States v. Cardales-Luna, 632 F.3d 731 (CA1 2011)[2] as to the conclusive nature of the Secretary of State Certification. *Cardales-Luna,* wrongfully deprives the district court of its obligation to *sua sponte* determine whether the jurisdictional requirements of the MDLEA had been met.

The Supreme Court in Northern Pipeline Construction Co. v. Co., 458 U.S. 50 (1982), and United States v. Klein, 80 U.S. (13 Wall.) 128 (1872)), delineated the federal courts' exclusive area of duty and authority, establish that Congress' revision to the MDLEA intruded on judicial authority. In Klein, the plaintiff sued the United States, as administrator of the estate of V.F. Wilson, for compensation for cotton seized from Wilson during the Civil War. Though he had aided the rebellion, Wilson availed himself of an amnesty by taking an oath of allegiance to the United States in 1864. He thereby received a presidential pardon. The Supreme Court had earlier ruled that the property of a pardoned rebel was purged of its owner's crimes. See United States v. Padelford, 76 U.S. (9 Wall.) 531 (1870). Accordingly, the Court of Claims awarded Wilson's estate $125,300. While the

---

[2] In Cardales-Luna, Appellants did not make the argument that Mr. Marval is presenting to this Court. Mainly, that MDLEA's certification procedure violates separation of powers by unconstitutionally delegating the jurisdiction determination to the executive branch, as opposed to the judiciary.

government's appeal was pending, Congress enacted a statute similar to the MDLEA. It provided (1) that no presidential pardon or amnesty was admissible in evidence against the United States in the Court of Claims, (2) that any such pardon or amnesty in fact constituted "conclusive evidence in the Court of Claims, and on appeal, that such person did take part in, and gave aid to the rebellion," and (3) that "on proof of such pardon ... the jurisdiction of the court shall cease, and the suit shall be forthwith dismissed." See 80 U.S. at 143–44.

The Supreme Court held that the statute exceeded Congress' authority because it stripped the courts of the ability to decide cases and dictated the effect they had to give certain evidence: "[T]he court is forbidden to give the effect to evidence which, in its own judgment, such evidence should have, and is directed to give it an effect precisely contrary. We must think that Congress has inadvertently passed the limit which separates the legislative from the judicial power." **Id. at 147**.

The MDLEA suffers from the identical defect as the statute in Klein. It, too, gives "conclusive" weight to a document created by the Executive Branch that, in turn, determines the jurisdiction of Article III courts. Congress lacks the power to take away the Judicial Branch's authority to decide cases and assign it to the Executive Branch.

*Northern Pipeline* reaffirmed that Congress cannot delegate deciding cases, including making factual findings, to an entity that is not an Article III court. That case held that the Bankruptcy Act of 1978 violated Article III by requiring certain lawsuits to be decided, even over objection, by bankruptcy courts rather than district courts. 458 U.S. at 87 (plurality), 91 (concurrence). The Court understood that, if Congress could assign the duty of deciding cases or controversies to a non-Article III entity, it could end impartial adjudication and, hence, the Rule of Law itself: "The Federal Judiciary was ... designed by the Framers to stand independent of the Executive and Legislature — to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remained impartial." 458 U.S. at 58.

The MDLEA is a more egregious violation of Article III than the Bankruptcy Act of 1978. The Bankruptcy Act's fatal defect was that it allowed judges who did "not enjoy the protections constitutionally afforded to Art. III judges" to decide cases. 458 U.S. at 60. The MDLEA assigns the power to find jurisdictional facts to a party in a criminal case. While the Bankrupt Act created a mere risk of partiality, the MDLEA guarantees it.

The MDLEA goes even further and requires federal courts to exercise jurisdiction even when there is proof that the boat in question is not a "covered vessel." This violates the well-established Article III corollary that the parties to a suit cannot create jurisdiction. Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); People's Bank v. Calhoun, 12 Otto (102 U.S.) 256, 260-61 (1880) ("[T]he mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case."). It follows that, contrary to what the MDLEA purports to authorize, the Executive Branch cannot create jurisdiction with a certificate. The prosecution has the burden in every case of proving jurisdiction exists as a matter of fact.

Criminal proceedings exist to require prosecutors to prove the facts on which convictions depend using fair methods. Congress, it follows, cannot tell federal judges that they have to accept Executive Branch assertions as truths without impermissibly invading the Judicial Branch's exclusive area of sovereign authority. If the revised MDLEA is constitutional, nothing stops Congress from passing a statute that says, "Jurisdiction is conclusively established in the federal courts

whenever any federal prosecutor certifies that there is jurisdiction."

The revised MDLEA impermissibly encroaches on the core judicial function of deciding cases. The revised MDLEA is an unconstitutional usurpation of judicial power by the political branches. Here the government wants to preclude discovery as tot eh court jurisdiction in case where the certification is silent as to the fact that it was a Dutch Navy Foreign Vessel that arrested the Defendants and that seized the drugs.

WHEREFORE, Mr. Freddy Jose Marval-Rivero respectfully request that the Indictment be dismiss, as the Maritime Drug Law Enforcement Act, 46 U.S.C. §70502(c)(2), violates Article III of the US Constitution.

In San Juan, Puerto Rico, September 22, 2020.

                S/RAYMOND L. SANCHEZ-MACEIRA
                RAYMOND L. SANCHEZ MACEIRA, ESQ.
                      USDC NO. 211405
                    COUNSEL FOR DEFENDANT
                        PO BOX 191972
                      SAN JUAN PR 00919
        TEL. 787-721-3370/ FAX 787-721-4706

CERTIFICATE OF SERVICE

I Hereby Certify: That on September 22, 2020, I electronically filed the foregoing with the clerk of the court using CM/ECF system which will send notification of such filing to the following: US. ATTORNEY OFFICE

In SanJuan P.R. September 22, 2020

S/RAYMOND L. SANCHEZ-MACEIRA
USDC NO. 211405

USA v. Freddy Jose Marval Rivero 19-mj-2139, Page 10